**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| RIORDAN LIMITED, AUTONOMY GLOBAL OPPORTUNITIES MASTER FUND, L.P., and ROBERT GIBBINS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2020-0633-KSJM |
| IVN CONSULTING, LLC, | ) ) | |
| Defendant. | ) | |

**ORDER ENTERING STAY OF PROCEEDINGS**

1.  Plaintiff Robert Gibbins, a citizen of the United Kingdom and Canada residing in Switzerland, manages his personal funds and investments through plaintiffs Riordan Limited ("Riordan") and Autonomy Global Opportunities Fund, L.P. ("AGO" and with Gibbins and Riordan, "Plaintiffs").[1]  Gibbins incorporated Riordan in Cyprus and AGO in the Cayman Islands.

2.  In 2014, non-party Irina Novitzky approached Gibbins with an investment opportunity in a Ukrainian development project.  The opportunity would require Gibbins to invest in a fund (the "Golden Fund") managed by non-party Gallois Invest ("Gallois"), a Ukrainian company that Novitzky managed.  Golden Fund would then use Gibbins' money to purchase 100% of the shares of non-party Kerambloki Invest LLC ("Kerambloki"), a company that held "the lease to nearly 30 acres of prime commercial

---

[1] The factual background is drawn from the Amended Complaint.  *See* C.A. 2020-0633-KSJM, Docket ("Dkt.") 41 ("Am. Compl.").

1

and residential real estate in the central District of Podil, City of Kiev, Ukraine."[2] Separately, Gibbins would purchase Kerambloki's debt through AGO.

3. Novitzky recommended this multi-layered investment structure to avoid regulatory delays that would have resulted from Gibbins investing directly in Kerambloki. She assured Gibbins that he could later transfer ownership of Kerambloki to himself, Riordan, or AGO.

4. Through Riordan, Gibbins contributed $3.1 million to the Golden Fund, which then purchased all of the Kerambloki shares on July 24, 2015. Through AGO, Gibbins purchased all of Kerambloki's debt for $7.9 million.

5. Novitzky represented to Gibbins that he would see a return on his investment in three years and that it would be ten to twenty percent greater than the average rate of return for similar projects. She told him that she would "be happy to provide [him] with [her] personal guaranties that the property will be kept for [him] safely, because [she is] controlling all operations of funds personally."[3]

6. Also in 2015, defendant IVN Consulting, LLC ("IVN"), a Delaware limited liability company, began to provide consulting services to Plaintiffs "in connection with the Kerambloki project" in exchange for approximately $10,000 per month.[4] Novitzky's

---

[2] *Id*. ¶ 15.

[3] *Id*. ¶ 17.

[4] *Id*. ¶ 20.

husband, Victor Novitzky,[5] is IVN's founding partner, though Novitzky served as Plaintiffs' primary contact in connection with the Kerambloki investment.

7. The consulting arrangement was informal at first. At the end of 2017, Novitzky sought to formalize the agreement in writing. IVN and Riordan executed a "Consultancy Agreement" on December 15, 2017, which they backdated to October 31, 2016 (the "First Consultancy Agreement").[6] Victor signed the First Consultancy Agreement on behalf of IVN.

8. Under the First Consultancy Agreement, IVN agreed to assist Riordan with "active monitoring and advisory [sic] in relation to the investments of [Riordan]," advise Riordan "concerning all actions which would be advantageous . . . in implementing its investment objective and policies," and "do all things necessary to carry out [IVN's] obligations."[7] The agreement did not specify the subject matter of the business relationship beyond Riordan's "investments." It further subjected itself to the laws of Cyprus and the non-exclusive jurisdiction of Cypriot courts.[8]

9. The First Consultancy Agreement expired on December 31, 2018.[9] On March 27, 2019, IVN executed another "Consultancy Agreement," this time with AGO (the

---

[5] For clarity, this Order refers to Mrs. Novitzky as Novitzky and Mr. Novitzky as Victor. The court intends no disrespect.

[6] Dkt. 45 ("Def.'s Opening Br.") Ex. O (First Consultancy Agreement).

[7] *Id*. §§ 3.1.1–3.1.3.

[8] *Id*. § 10.

[9] *Id*. § 2.

"Second Consultancy Agreement").[10]  The parties backdated the Second Consultancy Agreement to February 1, 2019, and it expired by its own terms on December 31, 2019.[11] It "replace[d] in its entirety" the First Consultancy Agreement, which it declared "null and void."[12]

10.     The Second Consultancy Agreement contains a more detailed list of IVN's obligations.  It also specifies that the scope of the business relationship is limited to "the existing investments of [AGO] in Ukraine," which it defines as the "Project."[13]  It is governed by Delaware law and includes a includes a provision stipulating to the non-exclusive jurisdiction of Delaware courts.[14]

11.     The lease held by Kerambloki expires in 2021.  In the nearly six years since Plaintiffs invested in the Golden Fund for the purpose of developing the land covered by the lease, Novitzky, Gallois, and IVN have made almost no progress on and have yet to obtain a construction permit for the Project.

12.     From 2016 to 2019, Novitzky made several representations to Gibbins regarding the Project's progress.  This included several revised budgets and requests for additional payments, oftentimes for seven-figure amounts adding up to over $5 million on

---

[10] Defs.' Opening Br. Ex. P (Second Consultancy Agreement).

[11] *Id*. § 2.

[12] *See id*. § 1.4.

[13] *Id*. § 3.1.1.

[14] *Id*. § 11.

top of Plaintiffs' initial investment. It also included "repeated assurances to Plaintiffs that the project was on track" and promises "that a permit would be secured imminently."[15]

13. In November 2018, an associate of Novitzky with power of attorney over Gibbins' account allocated $100,000 towards a consulting contract for herself, claiming it was an expense associated with Kerambloki. In the summer of 2019, Novitzky used her power of attorney over Gibbins' account to transfer $1 million of Gibbins' money to Gallois, claiming it was an expense associated with Kerambloki. Later that year, Novitzky obtained another $1 million from Plaintiffs, claiming it was for "urgent expenses" associated with Kerambloki.[16] In 2019, Gibbins hired KPMG to audit Kerambloki's accounts but was denied access to necessary documents.

14. Growing suspicious, Gibbins met with the Kiev City Architect Department in June 2020. Gibbins left the meeting with the understanding that no progress had been made on the Project, that Novitzky and her associates and related entities "entirely lacked the knowledge, skill, and experience necessary to bring the project to fruition," and that they had "likely been squandering or, worse, pilfering the significant resources . . . Gibbins had invested in the project over several years."[17]

15. Gibbins then asked Novitzky to transfer title of Kerambloki to him, as she had once promised to do. She refused and threatened to transfer his interests in Kerambloki to another investor.

_____

[15] *Id.* ¶ 54.

[16] *Id.* ¶ 63.

[17] *Id.* ¶ 52.

5

16.     In July 2020, AGO sued Kerambloki in Ukraine to recover its assets and prevent the threatened transfer of those assets to another investor.  On July 17, 2020, the Commercial Court of Kiev denied AGO's request.

17.     Three days later, Riordan sued Gallois in Ukraine seeking similar relief from the same court, which again denied the request on July 21, 2020.

18.     Nine days later, Plaintiffs filed a complaint in this court naming IVN, Gallois, and both Novitzkys as defendants.  Plaintiffs also sought a temporary restraining order enjoining the transfer of their ownership interests in Kerambloki, which the court denied on August 12 for lack of personal jurisdiction over Gallois and the Novitzkys.[18]

19.     After some jurisdictional discovery, Plaintiffs amended their complaint on November 23, 2020, asserting claims against IVN only (the "Amended Complaint").  That same day, Plaintiffs filed a complaint in Virginia state court against Gallois and the Novitzkys.[19]

20.     The Amended Complaint asserts five counts against IVN:  Count I for breach of contract; Count II for breach of fiduciary duty; Count III for fraud; Count IV for unjust enrichment; and Count V for an equitable accounting.  IVN has moved to dismiss the Amended Complaint pursuant to Court of Chancery Rules 12(b)(3), 12(b)(6), and

---

[18] *See* Dkt. 38.

[19] Def.'s Opening Br. Ex. X.

12(b)(7).[20] The parties fully briefed IVN's motion, and the court heard oral argument on April 12, 2021.[21]

21. IVN first moves to dismiss for improper venue pursuant to Court of Chancery Rule 12(b)(3) and *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[22] On a motion to dismiss under Rule 12(b)(3), "the court 'is not shackled to the plaintiff's complaint' and 'is permitted to consider extrinsic evidence from the outset.'"[23] "Courts traditionally dismiss a matter under Rule 12(b)(3) . . . when, applying the doctrine of *forum non conveniens*, Delaware is clearly not the appropriate forum for litigation."[24]

22. *McWane* provides the framework for this court's *forum non conveniens* analysis in the context of a first-filed action in another forum.[25] A *McWane* analysis asks "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?"[26]

23. IVN argues that the first-filed Ukrainian action is capable of doing prompt and complete justice as to the same parties and the same issues, and this rings true. The gravamen of the Amended Complaint is that the Novitzkys lied and stole from Plaintiffs

---

[20] *See* Dkt. 42.

[21] *See* Def.'s Opening Br.; Dkt. 46 ("Pls.' Answering Br."); Dkt. 49; Dkt. 53.

[22] 263 A.2d 281 (Del. 1970).

[23] *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007) (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4–5 (Del. Ch. Oct. 19, 2000)).

[24] *Lefkowitz v. HWF Hldgs, LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009).

[25] *See* 263 A.2d at 284.

[26] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).

7

over the course of five years in connection with the Ukrainian-based Project; those issues are squarely before the court in Ukraine. To the extent the Ukrainian action does not resolve the parties' core dispute, the Virginia action filed contemporaneously with the claims against IVN seems capable of doing so.

24. Plaintiffs rely on the Second Consultancy Agreement's forum selection clause to sidestep a *McWane* analysis.[27] "A valid forum selection clause . . . can preempt application of the *McWane* doctrine."[28] This remains true even where a forum selection clause provides for "non-exclusive" venue in a particular forum.[29]

25. The forum selection clause in the Second Consultancy Agreement provides for "the non-exclusive jurisdiction of the courts of Delaware to hear and determine any suit, action or proceeding which may arise out of or in connection with this Agreement."[30] Thus, at least as to any conduct arising in connection with IVN's obligations under the Second Consultancy Agreement, the parties have contracted for venue in this court.

26. Plaintiffs point to *Ingres Corp. v. CA, Inc.*, in which the Delaware Supreme Court held that "the *McWane* principle is a default rule of common law, which the parties

---

[27] *See* Pls.' Answering Br. at 19–21.

[28] *PPL Corp. v. Riverstone Hldgs. LLC*, 2019 WL 5423306, at *6 (Del. Ch. Oct. 23, 2019).

[29] *See Utilipath, LLC v. Hayes*, 2015 WL 1744163, at *4 (Del. Ch. Apr. 15, 2015) ("Nothing in the Supreme Court's opinion in *Ingres*, however, limited its reach to forum selection clauses that are exclusive in nature . . . . The fact that jurisdiction and venue for [related] suits . . . also may be proper in other courts does not detract from the plain language of [the forum selection clause], which definitively provides that jurisdiction and venue *are* proper here.").

[30] Second Consultancy Agreement § 11.2.

to the litigation are free to displace by a valid contractual agreement."[31]  Thus, "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result."[32]

28. Plaintiffs' reliance on the forum selection clause is misplaced.  The allegations in the Amended Complaint span approximately five years, only one of which is covered by the Second Consultancy Agreement.  The Amended Complaint alleges only that the following conduct occurred during the pendency of the Second Consultancy Agreement:  first, that associates and colleagues of Novitzky, and Novitzky herself, made several representations to Gibbins regarding the progress of the Project;[33] and second, that Novitzky misappropriated $1 million of Riordan's money in the summer of 2019.[34]  Neither Gibbins nor Riordan are party to the Second Consultancy Agreement.  To sever resolution of these issues from the larger set of allegations would run afoul of the principles of efficiency that motivate the *McWane* doctrine.

28. Thus, although the parties have contractually stipulated to this court as a proper venue for disputes over the Second Consultancy Agreement, the claims raised in the Amended Complaint are far too intertwined with the remainder of Plaintiffs' allegations

---

[31] 8 A.3d 1143, 1146 (Del. 2010).

[32] *Id.* at 1145.

[33] Am. Compl. ¶¶ 48–51.

[34] *Id.* ¶ 61.

for the narrow forum selection clause to preempt a *McWane* analysis as to the core issue in this case.

29. To the extent IVN was contractually obligated to oversee Plaintiffs' Kerambloki investment, resolving the claims against IVN will require evaluating whether the Kerambloki investment was mismanaged. That is precisely the issue before the Ukraine and Virginia courts.

30. That said, dismissal of this action is inappropriate. While "[a] party may move for either a stay or dismissal under *McWane*, . . . dismissals are rarely granted when the first-filed doctrine is invoked."[35] Under *McWane*, "it is preferable to merely stay the later-filed action because it is impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction."[36] This court's discretion to stay an action under *McWane* "should be freely exercised in favor of the stay."[37]

31. A stay is appropriate while facts dispositive to this case are litigated in the Ukrainian action or the Virginia action.

32. The Amended Complaint is therefore stayed. The parties shall report not less than quarterly concerning the progress of the parallel lawsuits in Ukraine and Virginia.

33. In view of the stay, the court does not reach IVN's Rule 12(b)(6) or 12(b)(7) motions.

---

[35] 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.01[a], at 5-3 (2nd ed. 2020).

[36] *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *6 (Del. Ch. Apr. 12, 1994).

[37] *McWane*, 263 A.2d at 283.

34.     For the foregoing reasons, IVN's motion to dismiss pursuant to Court of Chancery Rule 12(b)(3) is DENIED and this matter is STAYED.  IVN's motions to dismiss pursuant to Court of Chancery Rules 12(b)(6) and 12(b)(7) are further held in abeyance while this matter is stayed.

*/s/ Kathaleen St. J. McCormick*
Chancellor Kathaleen St. J. McCormick
Dated:  July 9, 2021